IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DEANNA MCCLOUD and )
TIMOTHY MCCLOUD )
)
         Plaintiffs, )
)
v. ) Case No. 06-1002-MLB-DWB
)
BOARD OF GEARY COUNTY )
COMMISSIONERS., *et al.*, )
)
         Defendants. )
)

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Motion to Compel Responses to Plaintiffs' Second Request for Production of Documents to Defendant Anwar Khalil Khoury, M.D. (Doc. 97.) Defendant Khoury filed a response (Doc. 103), and Plaintiffs have replied (Doc. 105). Defendant Khoury has also filed a Motion for Leave to File a Surreply. (Doc. 112.) Plaintiffs did not file a response and the time has expired to do so. *See* D.Kan. Rule 6.1(d)(1). Having carefully reviewed the submissions of the parties, the Court is prepared to rule on these motions.

## BACKGROUND

The background of this case is summarized in the Court's Orders of August 16, 2006 (Doc. 41), and August 21, 2007 (Doc. 69), which are incorporated herein

by reference. This case arises out of medical care and treatment provided to Plaintiff Deanna McCloud, who was 31 weeks pregnant at the time of the medical care at issue, and Kiana McCloud, her unborn child. The medical care was necessitated by a motor vehicle accident in which Deanna McCloud was involved. Plaintiffs filed their Complaint on January 6, 2006, claiming violations of The Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd (EMTALA), wrongful death and of alleged medical malpractice by the physician defendants. (Doc. 1.)

Plaintiffs bring the present motion seeking an Order compelling Defendant Khoury to respond to certain of Plaintiffs' discovery requests regarding Defendant's financial condition. (*See generally*, Doc. 98.) Plaintiffs argue the information is discoverable because they are seeking punitive damages and "the financial condition of the defendant" is one of the factors to be considered when determining an award of punitive damages pursuant to K.S.A. § 60-3702. (*Id*., at 9-10.) Defendant Khoury argues that the information will not be discoverable until and unless Plaintiffs obtain a judgment against him. (Doc. 103, at 2-3.)

## DISCUSSION

**I.   Defendant's Surreply**.

Before addressing the merits of Plaintiffs' Motion to Compel, the Court will

consider Defendant Khoury's Motion for Leave to File a Surreply. (Doc. 112.) Surreplies are generally "'disfavored.'" *ICE corp. v. Hamilton Sundstrand Corp*., No. 05-4135-JAR, 2007 WL 4239453, at *7 (D.Kan. Nov. 30, 2007) (*quoting* *Vulcan Materials Co. v. Atofina Chems. Inc.*, 355 F.Supp.2d 1214, 1246 (D.Kan.2005)). A surreply will not be allowed unless the reply of the party filing the initial motion contained new information which the responding party needs an opportunity to address. *Lopez v. Garcia*, 1 F.Supp.2d 1404, 1406 (D.Kan. 1997). Defendant argues that additional issues were "specifically raised" in the portions of Plaintiffs' reply regarding the testimony of Plaintiffs' expert, Dr. Carl Smith. (Doc. 112, at 1; *see also* Doc. 112-2.)

Defendant is correct that Plaintiffs' reference to the testimony of their expert was discussed for the first time in Plaintiffs' reply brief. Dr. Smith was not even deposed until February 18, 2008 (*See* Doc. 112-3), eleven days after Plaintiffs filed their initial motion. (Doc. 97.) As such, Defendant's Motion for Leave to File a Surreply (Doc. 112), is **GRANTED**. Defendant's Surreply (Doc. 112-2) shall be deemed filed with the District Court and the arguments therein will be considered in the Court's analysis of Plaintiffs' Motion to Compel.

## II.   Plaintiffs' Motion to Compel.

Plaintiffs seek documents dating as far back as 1999 relating to Defendant

Khoury's earnings and/or financial status including, but not limited to, tax returns and supporting documents, investment income, retirement savings, real property holdings, vehicles, livestock, and bank accounts. (Doc. 98-2, at 1-7.) Plaintiffs, who have asserted a claim for punitive damages against Defendant Khoury, contend this information is discoverable because they "carry the burden of establishing the financial condition of Defendant Khoury, and can only do so by obtaining the information requested in the written discovery requests at issue." (Doc. 98, at 9.) They contend their requests are "narrowly tailored" to calculate Khoury's "financial condition," "annual gross income," or "net worth," pursuant to Kansas statute. (*Id.*, at 9-10; *see also* K.S.A. 60-3702.)

Defendant opposes these requests, arguing they are irrelevant and that Plaintiffs "have not demonstrated that their claims are nonspurious." (Doc. 103, at 3.) Defendant contends that the requested information regarding his financial state is "not discoverable prior to [Plaintiffs] obtaining a judgment" against him. (*Id.*) Defendant continues that Plaintiffs are not allowed to seek punitive damages under their EMTALA claim. (*Id.*, at 4.) In the alternative, Defendant requests that the discovery requests "be held in abeyance until such time as the admissibility is apparent based upon a finding that his actions meet the requirements for punitive damages." (*Id.*)

**A.     Burden on a Motion to Compel**.

In ruling on this motion, the Court has "broad discretion regarding its control of discovery," which is abused only "when a denial of discovery precludes a fair trial." *Gaines v. Ski Apache,* 8 F.3d 726, 730 (10th Cir. 1993). Fed.R.Civ.P. 26(b)(1) permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party." The Rule also permits the Court to order discovery into any matter relevant to the "subject matter involved in the action" for "good cause." Fed.R.Civ.P. 26(b)(1). Therefore, the Federal Rules broadly define the scope of discovery.

The particular discovery requests at issue must be relevant on their face. *Williams v. Bd. of County Comm'rs*, 192 F.R.D. 698, 705 (D. Kan. 2000). Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request. *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections); *Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 685 (D. Kan. 1991) (stating that a party resisting a discovery request based on relevancy grounds bears the burden of explaining how "each

discovery request is irrelevant, not reasonably calculated to the discovery of admissible evidence, or burdensome").

### B.     Plaintiffs' Punitive Damages Claim is not "Spurious."

Pursuant to K.S.A. 60-3702(c), a plaintiff may recover punitive damages if he/she is able to establish by clear and convincing evidence that the defendant acted "with willful conduct, wanton conduct, fraud or malice." *See* ***Commerce Bank, N.A. v. Chrysler Realty Corp.***, 183 F.Supp. 1318, 1321 (D. Kan. 2002). This Court has previously held that it "need only find that Plaintiffs' claim for punitive damages is not spurious in order for discovery [of financial information relevant to punitive damages] to proceed." ***Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.***, No. 05-2164-MLB-DWB, 2007 WL 950282, at *13 (D. Kan. March 26, 2007) (citing ***Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.***, 130 F.R.D. 149, 152 (D. Kan. 1990) (holding that it was not necessary for plaintiff to make a *prima facie* showing of its entitlement to punitive damages, rather, plaintiff must only show that its claim for punitive damages is not spurious)). *See also* ***Audiotext Commun. Network Inc. v. US Telecom, Inc***., No. 94-2395-GTV, 1995 WL 625962, at *3 (D.Kan. Oct. 5, 1995) (citing ***Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.***, 130 F.R.D. 149, 152 (D. Kan. 1990) (holding that the party seeking discovery generally "'need not establish

a *prima facie* case on the issue of punitive damages before it can obtain pretrial discovery of [the other party's] financial statements and tax returns.'"))

As discussed in section I., *supra*, Defendant objects to Plaintiffs' reliance on their expert, who testified that Defendant's "actions and inactions were *grossly negligent*." (Doc. 105, at 2, emphasis in original.) The law of this District holds that "an expert may not state legal conclusions." **Garcia v. Estate of Arribas**, No. 04-1159-MLB, 2005 WL 6011256, at *3 (D.Kan. Nov. 21, 2005) (quoting **Phillips v. Calhoun**, 956 F.2d 949, 952 (10th Cir. 1992)). "Stated another way, 'an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts.'" *Id*. (citing **Okland Oil Co. v. Conoco Inc.**, 144 F.3d 1308, 1328 (10th Cir. 1998)). As such, the Court will not consider Dr. Smith's testimony in determining whether Plaintiffs' punitive damages claims are nonspurious.[1] Plaintiffs have, however, presented the Court with other factual allegations to ponder.

Defendant argues that the allegations contained in Plaintiffs' Complaint are stated "in only the most general of terms." (Doc. 103, at 3.) He continues that "Plaintiffs have merely asserted claims in a vacuum with the hopes that the Court

---

[1] The Court is commenting on Dr. Smith's testimony in the context of the present motion only while making no ruling regarding the admissibility of this testimony at trial.

will draw inferences such that their allegations rise above spurious." (*Id.*) The Court does not agree.

Plaintiffs' Complaint states claims for violation of EMTALA, wrongful death,[2] and medical malpractice against Defendant Khoury.  The Complaint contains factual statements to support those claims relating to Dr. Khoury's alleged inattention to "the deteriorating condition of both" Plaintiff DeAnna McCloud and her unborn baby.  (Doc. 1-2, at 6.)  In addition, Plaintiffs spent approximately three pages of their memorandum summarizing additional factual allegations relating to their punitive damages claim against Defendant Khoury.  (Doc. 98, at 6-9.) Included therein, Plaintiffs contend that Defendant Khoury advised Defendant Felts that Plaintiff DeAnna McCloud should be transferred to the military hospital without examining her and that Defendant Khoury subsequently "performed what is likely the most cursory evaluation imaginable" before again finding her to be stable enough for transfer.  (*Id.*)  Defendant does not address any of these factual allegations in his responsive memorandum.  (*See generally* Doc. 103.)  As such, the Court considers these allegations to be uncontroverted for the purposes of this motion only.

---

[2]  As Defendant points out, the case of ***Griffith v. Mt. Carmel Medical Center*** holds punitive damages are not recoverable under a claim for wrongful death.  826 F.Supp. 382, 385 (D.Kan. 1993).

The Court thus finds that Plaintiffs have provided sufficient factual background to establish that their claim for punitive damages is not spurious, thus meeting the threshold requirements for discovery of the requested financial data. The burden, therefore, is on Defendant to establish a legal basis as to why the requested information should not be produced. Simply stated, Defendant has failed to meet this burden. Defendant argues that the production of his financial information "would only serve to invade [Defendant's] privacy in contravention of Federal Rule of Civil Procedure 26(b)(2)." (*Id.*) Even assuming Defendant's records are "private" or confidential, this does not mean the records are privileged and/or nondiscoverable. "A respondent's interest in the nondisclosure and confidentiality of its financial records can usually 'be adequately protected by a protective order.'" ***Audiotext***, 1995 WL 625962, at *3 (*citing* ***Mid Continent Cabinetry***, 130 F.R.D. at 152); *see also* ***Learjet Inc. v. MPC Products Corp***., No. 05-1074-MLB-DWB, 2007 WL 2287836, at *5 (D.Kan. August 8, 2007). As discussed below, however, not all of Plaintiff's requests are appropriate.

**C.    Scope of Production**.

This District discussed the scope of discoverable financial information in ***Audiotext Communications Network, Inc. v. US Telecom, Inc.***:

> The court finds the current information of [a party's] net worth or financial condition relevant to the issue of

> punitive damages. *See **Industrial Elec. Engineering & Testing Co. v. Dynalectric Co.**,* No. 87-2555-V, 1990 WL 80411, at *1 (D. Kan. May 18, 1990). The most recent annual reports and current financial statements of [the party] suffice to determine punitive damages. ***Watie v. Fredericks of Hollywood Stores, Inc.**,* No. 87-2118-O, 1988 U.S. Dist. LEXIS 9923, at *2 (D. Kan. Aug. 24, 1988). <u>All other financial information is irrelevant to determining punitive damages</u>. *See id.;* ***Industrial Elec. Engineering & Testing Co.**,* 1990 WL 80411, at *1. "The relevant request is for the current financial status of [the party]." ***Industrial Elec. Engineering & Testing Co.**,* 1990 WL 80411, at *1.

1995 WL 625962, at * 3-4 (emphasis added). This Court noted in ***Heartland*** that "[t]here are other provisions of K.S.A. 60-3702 which might support discovery of additional financial information in certain cases," such as subsection (b)(3) which lists "the profitability of the defendant's misconduct." 2007 WL 950282, at *15. However, as in ***Heartland***, Plaintiff has not argued this as a basis for discovery of the requested financial information.[3]  *Id*.

---

[3]  K.S.A. 60-3702(e) & (f) refer to a defendant's "highest gross annual income earned for any one of the five years immediately before the act for which such damages are awarded" and "the profitability of defendant's misconduct [that] exceeds or is expected to exceed" other specific statutory limitations. This statutory language, however, sets "limitations for recovery rather than a grounds for recovery and therefore it would appear that they are applicable only to a defendant who seeks to limit the other statutory caps on punitive damages." ***Heartland***, 2007 WL 950282, at n. 18.

10

Plaintiffs seek documents dating as far back as 1999 relating to Defendant Khoury's earnings and/or financial status including, but not limited to, tax returns and supporting documents, investment income, retirement savings, real property holdings, vehicles, livestock, and bank accounts. (Doc. 98-2, at 1-7.) Based upon the holding in *Audiotext Communications Network, Inc.,* however, the Court limits the financial information required from Defendant on the issue of punitive damages to the most recent annual reports and current financial statements of the Defendant measured at the time set forth below for Defendant to produce such information.[4]

**D.    Timing of Production**.

Defendant objects that Plaintiffs' request should be denied as premature, contending "the confidential financial information" sought by Plaintiffs is irrelevant and not discoverable until a judgment is obtained against him. (Doc. 103,a t 3.) In the alternative, he contends that the discovery of the information be stayed "until such a time as its relevance become apparent." (*Id*., at 4.)

---

[4] To the extent the Court has denied Plaintiffs' request for additional financial information, including Defendant's tax returns, investments, accounts, etc., the ruling is without prejudice to renewal if Plaintiffs subsequently establish that the information produced in accordance with this Order does not sufficiently demonstrate Defendant's net worth and/or financial condition.

A similar argument was made in *Heartland*, 2007 WL 950282, at *13.[5]  In that case, the undersigned magistrate judge noted that courts in this District have followed a "varied practice" in determining whether or not to delay discovery of financial information relating to a punitive damages claim.  *Id*.  As in *Heartland*, this Court will not attempt to predict whether the amount of punitive damages in the present case, if any, will be determined by the trial judge pursuant to K.S.A. 60-3702(a) or by the jury.

> However, because it is possible that this issue may be submitted to the jury for determination, the Court cannot simply agree to delay production of financial information indefinitely with the assumption that there will be a bifurcated trial. Instead, the Court will find that some of defendants' financial information is relevant on the issue of punitive damages, but the Court will stay the production of that information until later in the proceedings.

*Id*., at *14.

As it did in *Heartland*, this Court therefore **GRANTS** Plaintiffs' motion to compel the production of the requested financial information to the extent the discovery requests seek financial information directly related to Defendant's most

---

[5] Plaintiffs state that the ruling in *Heartland* "is reasonable and seems to honor Defendant's request that the production not take place, 'until such time as its relevance becomes apparent.'" (Doc. 105, at 3.)  Plaintiffs thus request that the Court "enter an Order consistent with the Order entered in *Heartland*."

12

recent annual reports and current financial statements of the Defendant measured at the time set forth below for Defendant to produce the documents.  The Court **DENIES** Plaintiffs' motion to the extent it seeks other financial information relating to Defendant, without prejudice to renewal in the future as previously outlined.  *See* n. 4, *supra*.

The actual production of the documents is, however, **STAYED** until the District Court determines whether Plaintiffs' claim for punitive damages and/or the underlying tort claims survive any dispositive motion potentially filed by Defendant.  Thus, Defendant will not be required to produce the requested information until the *earliest* of the following dates: (1) fifteen (15) days following a ruling by the trial court which denies a dispositive motion concerning Plaintiffs' tort claims and/or claims for punitive damages; or (2) fifteen (15) days following the deadline for filing dispositive motions *if* there has been no dispositive motion directed to Plaintiffs' claims which potentially support an award of punitive damages.  "[B]y delaying the production of this financial information to a point closer to trial, the information produced will, in fact, be more 'current' than information that would be produced now."  ***Heartland Surgical Specialty Hosp.,*** 2007 WL 950282, at *15.  Thus, Plaintiff should not be prejudiced by this delay.  *Id*.

In the interim, the Court strongly encourages the parties to confer regarding the need for, and language of, an appropriate protective order and/or an amendment to the prior protective orders which dealt only with the inspection and production of medical and/or mental health records.  (*See* Docs. 48, 49.)

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Responses to Plaintiffs' Second Request for Production of Documents to Defendant Anwar Khalil Khoury, M.D. (Doc. 97) is **GRANTED in part** and **DENIED in part**, as more thoroughly set forth above.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File a Surreply (Doc. 112) is **GRANTED**.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas on this 11th day of April, 2008.

   s/   DONALD W. BOSTWICK
DONALD W. BOSTWICK
United States Magistrate Judge