## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| DEANNA MCCLOUD and TIMOTHY MCCLOUD, | ) ) ) | |
| Plaintiffs, | ) ) | |
| VS. | ) ) | Civil Action No. 06-1002-MLB |
| BOARD OF GEARY COUNTY COMMISSIONERS, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Joint Motion for Protective Order. (Doc. 114.)  Plaintiffs have responded in opposition (Doc. 125) and  Defendants have replied (Doc. 135).  Having carefully reviewed the submissions of the parties, the Court is prepared to rule.

## BACKGROUND

The background of this case is summarized in the Court's Orders of August 16, 2006 (Doc. 41), August 21, 2007 (Doc. 69), and April 11, 2008 (Doc. 118), which are incorporated herein by reference.  This case arises out of medical care and treatment provided to Plaintiff Deanna McCloud, who was 31 weeks pregnant

at the time of the medical care at issue, and Kiana McCloud, her unborn child.  The

medical care was necessitated by a motor vehicle accident in which Deanna

McCloud was involved.  Plaintiffs filed their Complaint on January 6, 2006,

claiming violations of the Emergency Medical Treatment and Active Labor Act, 42

U.S.C. § 1395dd (EMTALA), wrongful death and of alleged medical malpractice

by the physician defendants.  (Doc. 1.)

## DISCUSSION

Defendants seek a protective order "relieving" them from "any obligation to

respond to Plaintiffs' Requests for Admissions as propounded."  (Doc. 114, at 1.)

With little or no discussion of specific requests in their initial brief, Defendants

contend that Plaintiffs' requests are "duplicative, unreasonably cumulative, and

unduly burdensome."  (*Id.*)  Plaintiffs respond in opposition that Defendants have

failed to "carry the burden of showing that the discovery requests submitted were

somehow inappropriate."  (Doc. 125, at 2.)

Plaintiffs served 197 Requests for Admission on Defendant Board of

Directors of Geary Community Hospital, 120 on Defendant Marc Felts, M.D., and

121 on Defendant Anwar Khoury, M.D.  (Docs. 114-2, 114-3, 114-4.)  Apparently,

Defendants are objecting to all of Plaintiffs' requests on the basis of one or more of

the stated reasons.  In their initial brief, however, Defendants referred to only 14

requests out of 438 propounded – Requests Nos. 1, 3, and 4 to Defendant Khoury (Doc. 114, at 4; Doc. 114-4, at 2) and Requests Nos. 73-83 to Defendant Felts (Doc. 114, at 6; 114-3, at 11-12).  None of the Requests submitted to Defendant Board of Directors of Geary Community Hospital were addressed in Defendants' motion.  (*See generally*, Doc. 114.)  The Court will address each of these specific objections in turn.

### A.  Requests for Admission Nos. 1, 3, and 4 to Defendant Khoury.

These requests ask Defendant to admit or deny that Plaintiff DeAnna McCloud was involved in a "high-speed auto accident," " a collision with a tractor-trailer," and/or a "head-on collision with a tractor-trailer" on the morning at issue, respectively. (Doc. 114-4, at 2.)  Plaintiffs contend that "[t]here is a significant association between high impact collisions like the one in which DeAnna McCloud was involved, and placental abruption like the one she sustained."  (Doc. 125, at 24-25.)  Therefore, according to Plaintiff,

> the more information Dr. Khoury had about the severity of the event which lead to DeAnna McCloud's hospitalization, the more aware Dr. Khoury should have been of the possibility of placental abruption, the more significance he should have placed on the fetal heart strips which were consistent with placental abruption, and the more hesitant he should have been in agreeing to transfer the patient.

3

(*Id.*, at 25.)

Defendants argue that these three requests, directed to Defendant Khoury only, "could, and should, more efficiently and appropriately be propounded as a single Interrogatory." (Doc. 114, at 4.) While the Court sympathizes that these three discovery requests could have been combined and/or worded more efficiently, it does not fault Plaintiffs' reasoning for propounding all three requests.[1] Further, the Court does not agree that Plaintiffs abused the discovery process by choosing to use Requests for Admissions as opposed to Interrogatories to illicit the desired information.

> Parties may choose the manner and method in which they conduct discovery. The Federal Rules provide several vehicles for discovery. Parties may choose their preferred methodology. Courts generally will not interfere in such choices.

---

[1] As Plaintiffs note, Defendants in the joint motion had no difficulty stating that "Dr. Felts observed that Mrs. McCloud had been involved in a motor vehicle accident (a head-on collision with a semi tractor-trailer) . . . ." (Doc. 114 at 2.) The three requests at issue then attempt to determine whether Dr. Khoury also knew these facts prior to the time he reviewed the fetal heart strips. If all of the facts were lumped together in one single request, Dr. Khoury could conceivably "dodge" the question by surmising that he did not now all three things about the accident, i.e, that it was a "high speed auto accident," that it was a "collision with a tractor-trailer," and that it was a "head-on collision with a tractor-trailer." Because the nature of the accident may have relevance to how Dr. Khoury conducted his review of the fetal heart strips, the Court does not find it burdensome to effectively break the request into three separate requests. In any event, Dr. Khoury should be able to easily and quickly respond to these requests by either admitting or denying them.

4

*Audiotext Communications Network, Inc. v. US Telecom, Inc*., No. 9402395-GTV, 1995 WL 625962, at *5 (D.Kan. Oct. 5, 1995).  The Court sees no reason to make an exception to this rule in the present situation.  Defendants' motion is **DENIED** as it relates to Requests for Admission Nos. 1, 3, and 4 to Defendant Khoury.

      **B.**      **Requests for Admission Nos. 73 - 83 to Defendant Felts**.

Plaintiffs' Requests for Admission Nos. 73-83 to Defendant Felts seek admissions regarding whether certain individuals or entities had been advised of the medical stability, or instability, of DeAnna McCloud and/or her unborn child prior to, or at the time of, DeAnna McCloud's transfer.  (Doc. 114, at 6-7; Doc. 114-3, at 11-12.)  Defendants argue that the phrasal differences in these Requests also illustrate the "epitome of minutiae" encompassed within Plaintiffs' Requests. (Doc. 114, at 6.)

At first glance, these Requests appear virtually indistinguishable.  Upon closer inspection, however, each Request refers to a different combination of patient (DeAnna McCloud as opposed to her unborn child), time ("prior to" as opposed to "at the time of" transfer), condition ("was" as opposed to "was not"

5

medically stable),[2] and health care provider (Irwin Army Hospital as opposed to "Dr. Thai at Irwin Army Hospital").  (*See* Doc. 114-3, at 11-12.)  Clearly, each of these Requests involves a different set of facts relevant to the case.  As such, the Requests are neither duplicative nor cumulative.

Plaintiffs have argued that the significant number of requests to the Defendants are justified because of Defendants' conflicting or non-responsive answers during their depositions, and that these requests are designed to pin them down as to the requested facts.  (Doc. 125 at 10-12.)  Based on the record before the Court, it cannot say that the requests in general or either duplicative or cumulative.[3]  Defendants' motion is, therefore, **DENIED** as it relates to Requests for Admission Nos. 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, and 83 to Defendant Felts.

C.     **Remaining Requests for Admission**.

---

[2]  All of these requests relate to what either Irwin Army Hospital or Dr. Thai "was advised" or told in connection with the transfer of DeAnna McCloud and her unborn child.  Therefore, some requests are phrased to verify if a certain specific statement or representation was made, *i.e.*, Request 73, while others are phrased to verify that representations were not made, *i.e.,* Request 80.  While this increases the number of requests, it also is more factually precise, and distinguishes between affirmative representations and silence.

[3]  It is interesting, however, that Plaintiffs submit just as many requests to Dr. Felts as to Dr. Khoury, particularly where Plaintiffs have acknowledged that Dr. Felts was more open during his deposition.  (Doc. 125 at 10-11.)

As for the remaining requests, Defendants opening brief does not so much as list by category of objection how or why the remaining 424 requests are arguably objectionable.[4]  This is clearly improper.

> A party opposing a discovery request cannot make conclusory allegations that a request is irrelevant, immaterial, unduly burdensome, or overly broad. Instead, the party resisting discovery **must show specifically how each discovery request** is irrelevant, immaterial, unduly burdensome or overly broad.

*Gheesling v. Chater*, 162 F.R.D. 649, 650 (D.Kan. 1995) (citations omitted) (emphasis added).  "The Court will not assume to make Defendants' arguments for them, nor will the Court on its own review all of the [remaining 424] requests to see which ones might possibly be objectionable."  *Utley v. Wray*, No. 05-1356-MLB, 2007 WL 2703094, at *3, n.2 (D.Kan. Sept. 14, 2007).

Defendants also argue that the Requests are objectionable in their entirety due to the arguably large number propounded.  (Doc. 114, at 7; Doc. 135, at 6.)  As this Court previously stated in *Utley*, it

> is cognizant of the fact that large numbers of requests for admissions may be unduly burdensome depending on the facts and circumstances of the particular case.  While Plaintiff is correct in noting that Fed.R.Civ.P. 36 does not

---

[4]  As stated previously, Defendants' initial brief does not specifically refer to a single one of the Requests to Defendant Board of Directors of Geary Community Hospital which Defendants contend are objectionable.

7

> contain a specific limit on the number of requests for
> admission that may be served, the Court does have the
> power to limit the number of discovery requests.  *See*
> Fed.R.Civ.P. 26(b)(2)(A) ("By order or local rule, the
> court may also limit the number of requests under Rule
> 36.") . . . [L]arge numbers of requests for admission may
> also be part of a "scorched earth" discovery strategy
> designed to overwhelm an opponent, particularly where
> the requests are of marginal relevance.

No. 05-1356-MLB, 2007 WL 2703094, at *2, n.1 (D.Kan. Sept. 14, 2007).

Defendants argue that Plaintiffs' Requests "are so voluminous and so framed that

to answer them would be unduly burdensome."  (Doc. 135, at 6.)  Defendants

continue that "admission requests can also be objectionable cumulatively on the

ground that responding to the requests is unduly burdensome."  (*Id.*, at 7.)

    While Defendants repeatedly argue that the number of requests are

"excessive" and "oppressive," they made little or no effort to provide substantive

discussion as to how or why the number of requests submitted to each Defendant,

on its face, is objectionable given the facts of this multi-Defendant, medical

malpractice case, the circumstances of which involve the death of a newborn.  (*See*

Doc. 135, at 13-14.)  In the present case, as in ***Utley***, Defendants have not

convinced the court that Plaintiffs are abusing the use of requests for admission

simply because of the number of requests that were served.  *Id*.

    Simply saying a task is unduly burdensome or "oppressive" does not make it

so.  Defendants must meet their burden to establish how each request is overly

broad "'by submitting affidavits or offering evidence revealing the nature of the

burden.'"  *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No.

05-2164-MLB-DWB, 2007 WL 756631, at *10 (D.Kan. March 8, 2007) (quoting

*Allianz Ins. Co. v. Surface Specialties, Inc.*, No. Civ.A.03-2470-CM-DJW, 2005

WL 44534, at *2 (D.Kan. Jan. 7, 2005)).  Defendants have failed to do so.

In their reply brief, Defendants for the first time discuss by category their

other objections to Plaintiffs' other 424 Requests.  Defendants, in their reply,

provide 'a description of general grounds upon which certain of the Requests are

objectionable, and have listed which Requests are objectionable under what

grounds."  (Doc. 135, at 8.)  While this would have been appropriate in

Defendants' initial joint brief, and while some of these objections might have

merit,[5] it is improper to hold back present such arguments for the first time in a

_____

[5]  The Court has reviewed the specific requests directed to the Hospital Board that
Defendants have identified in the reply brief as involving issues of pure law.  (Doc. 135 at
10.)  The Court agrees that these requests (14-20, 121 and 197) appear to involve
hypothetical questions concerning pure law rather than the application of law to fact.
However, as previously noted, not one paragraph in the initial 10-page joint motion made
this argument as to the Board, either generally or by reference to specific requests.
Instead, the Court was presumably supposed to review all of the requests and to decide
whether each one was proper or not, without any specific objections other than that there
were too many requests, they were duplicative and they were burdensome.  Only in the
18-page reply brief do Defendants provide the Court with the legal basis for specific
objections based on pure law or "reasonable expectation."

reply brief, and the Court will not consider Defendants' newly raised arguments.

*Acker v. Burlington Northern & Santa Fe Ry. Co*., 388 F.Supp.2d 1299, 1302

(D.Kan. 2005) (citing *Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1288

(10th Cir.2003) (argument raised for the first time in reply brief is waived);

*Coleman v. B-G Maint. Mgmt.*, 108 F.3d 1199, 1205 (10th Cir.1997) (issues not

raised in the opening brief are deemed abandoned or waived)).

Defendants argue that if they were required to address the facts of every

individual objectionable request, as Plaintiffs suggest, then objecting would be as

burdensome as having to answer them in the first place.  (Doc. 135 at 8.)  While

this argument has some logical appeal, Defendants did not even attempt to list the

specifically objectionable requests by category and by legal argument in their

initial joint brief as they have now done in their joint reply.  Obviously, it is not too

burdensome for Defendants to do this or they would not have done so in the reply

brief.  By taking a shotgun approach in their initial joint motion, however,

Defendants failed to meet their burden to specifically establish how each request

for admission is objectionable.  As stated in *Utley*, "the Court will not surmise as to

the nature of Defendants' objections."  2007 WL 2703094, at *2, n 1.  In addition,

the Court will not allow Defendants to circumvent their obligation by now

considering proper arguments made for the first time in a reply brief.  As such, the

10

Court **DENIES** Defendants' motion in regard to these remaining Requests for Admission.

**IT IS THEREFORE ORDERED** that Defendants' Joint Motion for Protective Order (Doc. 114) is **DENIED**.  Defendants will submit their answers to Plaintiffs' Requests for Admission on or before **September 10, 2008.** [6]

IT IS SO ORDERED.

Dated at Wichita, Kansas, this 11th day of August, 2008.

            s/ DONALD W. BOSTWICK    
            DONALD W. BOSTWICK
            United States Magistrate Judge

---

[6]  The pretrial conference in this case is set for August 19, 2008 before Judge Belot.  (Doc. 144.)  Some of the requests in this case could be resolved by stipulations of the parties in the pretrial order and/or at the pretrial conference. Also, to the extent that responses to these requests for admission may affect the timing of dispositive motions and/or the timing of responses to dispositive motions, those matters can be addressed at the pretrial conference.